UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRENT V.[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04584-JPH-DLP |
| | ) | |
| ANDREW M. SAUL Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Brent V. seeks judicial review of the Social Security

Administration's decision denying his petition for Disability Insurance Benefits

and Supplemental Security Income.  For the reasons below, the decision is

**AFFIRMED**.

**I.**
**Facts and Background**

Plaintiff applied for Disability Insurance Benefits and Supplemental

Security Income on February 9, 2016, alleging an onset date of November 15,

2014.  Dkt. 5-2 at 16.  The Social Security Administration ("SSA") denied his

application at the initial and reconsideration stages.  *Id.*

---

[1]  To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Administrative Law Judge ("ALJ") Kevin M. Walker held a hearing on May 9, 2018 and later denied Plaintiff's application for benefits. *Id.* The Appeals Council denied review in September 2019. Dkt. 7 at 3; dkt. 5-2 at 2.

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. Dkt. 5-2 at 16–27. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] since the alleged onset date. *Id.* at 18.

- At Step Two, Plaintiff had "the following severe impairments: degenerative disc disease, attention-deficient/hyperactivity disorder, depression, and anxiety." *Id.* at 19.

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

- After Step Three but before Step Four, he had the residual functional capacity ("RFC") "to perform light work . . . except occasional climbing of ramps or stairs. Never climbing ladders, ropes, or scaffolds. Occasional balancing, stooping, kneeling, crouching, and crawling. The ability, on a sustained basis, to understand, carryout, and remember simple instructions, respond appropriately to supervision and to coworkers in usual work situations, and deal with changes in routine settings. No interaction with the public. He can be around coworkers throughout the day, but with only brief, incidental interaction with coworkers and no tandem job tasks requiring cooperation with coworkers." *Id.* at 21.

- At Step Four, Plaintiff "is unable to perform any past relevant work." *Id.* at 25.

- At Step Five, considering Plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy" that he can perform. *Id.*

---

[2] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

On November 18, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g).  Dkt. 1.

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).  "The statutory definition of 'disability' has two parts." *Id.* at 217.  First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.*  "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010).  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.*

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  In evaluating the evidence, the Court gives the ALJ's credibility determinations

"considerable deference," overturning them only if they are "patently wrong."

*Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R.

§ 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform h[is] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  "If a claimant satisfies

steps one, two, and three, [he] will automatically be found disabled.  If a

claimant satisfies steps one and two, but not three, then [he] must satisfy step

four.  Once step four is satisfied, the burden shifts to the SSA to establish that

the claimant is capable of performing work in the national economy."  *Knight v.*

*Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a

claimant's RFC by evaluating "all limitations that arise from medically

determinable impairments, even those that are not severe."  *Villano v. Astrue*,

556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a

line of evidence contrary to the ruling."  *Id*.  The ALJ uses the RFC at Step Four

to determine whether the claimant can perform his own past relevant work

and, if not, at Step Five to determine whether the claimant can perform other

work.  *See* 20 C.F.R. § 404.1520(e), (g).  The burden of proof is on the claimant

for Steps One through Four but shifts to the Commissioner at Step Five. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.
### Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ: (1) did not properly address his subjective symptoms and (2) posed a flawed hypothetical to the vocational expert by not including all of the limitations supported by the medical evidence in the record. Dkt. 7 at 4. The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective allegations about his conditions and considered all evidence in the record. Dkt. 11 at 1.

### A. Subjective Symptom Analysis

Plaintiff argues that the ALJ did not properly address his subjective symptoms because his decision (1) failed to properly address SSR 16-3p and (2) ignored supportive evidence. Dkt 7 at 4.

### 1. Consideration of Required Factors

If an ALJ cannot make a fully favorable disability determination "based solely on objective medical evidence," then he should "carefully consider other evidence in the record" and the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate "the intensity, persistence, and limiting effects of an individual's symptoms."  SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), at *6–8; *see* 20 C.F.R. § 404.1529(c)(3).  These factors include: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms, and (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms.  *Id.*

Plaintiff argues that the ALJ erred by failing to address the factors required by SSR 16-3p, dkt. 7 at 20, but does not identify or explain which factor the ALJ failed to consider.  The Commissioner responds that the ALJ's gave several good reasons for not giving Plaintiff's subjective statements full credit.  Dkt. 11 at 8.

In his decision, the ALJ recognized his duty to "consider other evidence in the record" if the objective medical evidence alone could not substantiate Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms."  Dkt. 5-2 at 21.  And the ALJ addressed the factors required by SSR 16-3p.

6

First, the ALJ considered the effects that Plaintiff's symptoms had on his daily activities. For example, the ALJ recognized Plaintiff's statement that "multiple conditions limit his ability to work . . . [and] affect many abilities, including his ability to lift, bend, remember, and get along with others." Dkt. 5-2 at 21. The ALJ also noted Plaintiff's statement that he had "problems being around large groups of people, anger, frequent hallucinations, and trouble with being bossed around." *Id.* at 21–22. The ALJ also considered Plaintiff's "constant back pain," which affects his ability to stand (about 10 minutes at a time), walk (less than half a block), sit (about 10 minutes at a time), and lift (about 5 pounds). *Id.* at 22. Finally, the ALJ noted that Plaintiff and his wife reported that he "is able to do many activities of daily living, including watching television, helping with household chores, such as sweeping, cooking with a microwave, and taking out the trash, and taking care of pets, but is sometimes limited by his symptoms." *Id.* at 23.

Second, the ALJ discussed the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms. The ALJ noted Plaintiff's testimony that his back pain was "constant" and "typically at an 8/10 severity scale." *Id.* at 22. The ALJ also considered treatment notes from May 2017 indicating "low back tenderness" and "normal sensation to light touch." *Id.*

Third, the ALJ considered factors that precipitate and aggravate the symptoms by noting that "[t]he evidence does not establish that changes or increased demands have exacerbated Plaintiff's symptoms and signs." *Id.* at 20.

Fourth, the ALJ weighed the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms.  The ALJ recognized that Plaintiff reported taking multiple medications to treat his mental conditions, including Lamictal, Latuda, and Zyprexa.  *Id.* at 22–23.  The ALJ noted that both Plaintiff and his wife noticed improvements with psychotropic medication, specifically that Plaintiff was "staying mad less and getting over things quicker" and that the medication had "somewhat helped decrease [Plaintiff's] symptoms' severity."  *Id.* at 22.  The ALJ recognized May 2016 treatment notes, which indicated that Plaintiff's hallucinations "were somewhat better with Zyprexa."  *Id.* at 22–23.  The ALJ also noted that Plaintiff had not taken medication for his back.  *Id.*

Finally, the ALJ considered treatment, other than medication, that Plaintiff receives or has received for relief of pain or other symptoms.  The ALJ recognized that Plaintiff's treatment "has generally been conservative."  *Id.* at 22.  The ALJ also considered the fact that Plaintiff's treatment included mental health services and counseling, *id.*, and that Plaintiff reported trying chiropractic treatment and physical therapy in the past, though the physical therapy notes show he was discharged for non-compliance, *id.* at 23.  Finally, the ALJ also considered the fact that medical records did not document the need for any ambulation assistance device, that Plaintiff had not had surgery on his back, and that treatment for his back "has been minimal" since receiving an injection in January 2017.  *Id.*

Because the ALJ "carefully considered other evidence in the record," 20 C.F.R. § 404.1529(c)(3), and the factors set forth in SSR 16-3p, remand is not required on this ground. *See Apke v. Saul*, 817 F. App'x 252, 257–58 (7th Cir. 2020) (deferring to ALJ when plaintiff failed to show ALJ's subjective symptom evaluation was "patently wrong").

### 2. Assessment of Supportive Evidence

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). "But an ALJ need not mention every piece of evidence, so long [as] he builds a logical bridge from the evidence to his conclusion." *Id.*

Plaintiff claims that the ALJ noted that physical exams, mental status exams, and medical imaging were largely negative, but did not make note of "all of the records that were not 'negative.'" Dkt. 7 at 20. Specifically, Plaintiff points to records from his therapy sessions showing that he:

- Presented with "rapid speech, scattered thoughts, inability to complete a sentence . . . and . . . limited eye contact";

- Had poor hygiene and grooming at times;

- Has "some trouble remembering things, his mind races, and he has trouble focusing and concentrating";

- "[E]ndorsed dysphoric mood, sleep disturbance, irritability, diminished interest in activities, seeing shadows, and racing thoughts"; and

- Reported increased depression, visual hallucinations, anxiety, boredom, stress, and paranoia.

*Id.* at 19–20. However, the "ALJ need not . . . discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). And the ALJ did not ignore that entire line of evidence. Instead, at Step Four, the ALJ discussed much of the mental health evidence that Plaintiff points to, including that he reporting having anger issues, dkt 5-2 at 20, that his conditions affected his ability to concentrate and complete tasks, *id.*, and that he reported "troubling handling stress and changes in routine and hallucinates," *id.* at 20. The ALJ also noted that Plaintiff "reported in his function reports that he has no problems with personal care and does not need to be reminded to perform personal hygiene tasks." *Id.*

The ALJ also rooted his conclusions in that evidence. Specifically, in "rat[ing] the severity of [Plaintiff's] mental impairment," *id.* at 21, the ALJ noted Plaintiff's "mild limitation" in "understanding, remembering, or applying information," *id.* at 19, his "moderate limitation" in "interacting with others," *id.* at 20, and his "moderate limitation" in "concentrating, persisting, or maintaining pace," *id.* at 20. Furthermore, the ALJ noted Plaintiff's "mild

10

limitation" in "adapting or managing himself," specifically that he reported
"trouble handling stress" and hallucinations. *Id.* at 20.

Finally, Plaintiff argues that the ALJ erred by describing Plaintiff's
treatment as "conservative," and by using the nature of his treatment to find
that he is not disabled. Dkt. 7 at 21. However, an ALJ is "expressly permitted"
to consider a claimant's treatment history. *See* 20 C.F.R. § 404.1529(c)(3); *see
also Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). Furthermore, the ALJ
"explored [Plaintiff's] explanations as to the lack of medical care" and provided
a clear reason for his conclusion. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th
Cir. 2008). The ALJ found that the medical records "noted some non-
compliance with medication," dkt. 5-2 at 22, and that Plaintiff was discharged
from physical therapy for non-compliance, *id.* at 23. The ALJ also noted
Plaintiff's explanation for why he has not had surgery on his back. *Id.*
Although the record does not indicate that any doctor found surgery to be
appropriate, Plaintiff reports being scared to have surgery. *Id.* Finally, the ALJ
noted Plaintiff's back injection (which took place in January 2017), and that
since that injection "treatment has been minimal." *Id.*

Because the ALJ built a logical bridge from the evidence to his
conclusion that Plaintiff's statements concerning the intensity, persistence, and
limiting effects of his symptoms are not entirely consistent with the medical
evidence, remand is not required. *Denton*, 596 F.3d at 425; *see also Biestek v.
Berryhill*, 139 S. Ct. 1148, 1151 (2019).

## B. RFC Analysis

A claimant's RFC represents "the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.  Here, the ALJ found that Plaintiff could:

- Occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and perform speech as part of the job duties;

- Never climb ladders, ropes, or scaffolds;

- Understand, carryout, and remember simple instructions;

- Respond appropriately to supervision and to coworkers in usual work situations, and deal with changes in routine work settings;

- Not have interaction with the public; and

- Can be around coworkers throughout the day, but with only brief, incidental interaction with coworkers and no tandem job tasks requiring cooperation with coworkers.

Dkt. 5-2 at 21.

"The RFC assessment must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, 61 Fed. Reg. 34474-01 (July 2, 1996). But the lack of an explicit "function-by-function written account" of a claimant's RFC "does not necessarily prevent [a court] from concluding that the ALJ appropriately considered a function." *Jeske v. Saul*, 955 F.3d 583, 595–96 (7th Cir. 2020).  The Court's "role is to determine whether the ALJ applied the

12

right standards and produced a decision supported by substantial evidence." *Id.* at 596.

Plaintiff argues that the ALJ erred in determining his RFC because he "fail[ed] to account for the evidence in the record regarding Plaintiff's severe back and mental impairments, and creat[ed] limitations not supported by medical evidence." Dkt. 7 at 26. The Commissioner responds that the ALJ supported his RFC determination with citations to the medical and opinion evidence. Dkt. 11 at 8.

Here, the ALJ applied the correct law when he "include[d] a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p. Then, in making the RFC calculation, the ALJ gave "significant weight" to Dr. Robbins' examination, which showed that Plaintiff "would benefit from simplistic and repetitive job tasks, require job settings not requiring interactions with strangers, [and] would benefit from low-energy job tasks in small work group settings." Dkt. 5-2 at 24. Dr. Robbins is a clinical psychologist who examined the Plaintiff, and the ALJ noted that his opinion "is supported by the findings from his exam" and "is also generally consistent with the evidence." *Id.*

The ALJ also gave "some weight" to the opinions of the state agency psychological consultants, who found that Plaintiff had "some mental functioning limitations," including limitations in his "ability to carry out detailed instructions and maintain concentration for extended periods." *Id.* at

23–24.  Furthermore, the ALJ found that Plaintiff had even more limitations than these doctors found "based on the substantial evidence . . . which include[d] newer evidence from after the dates of the[se] opinions." *Id.* at 24.

Finally, the ALJ considered Plaintiff's statements that (1) his conditions affected his ability to "remember, and to get along with others," (2) he had "problems being around large groups of people," and (3) he had "trouble with concentration and memory." *Id.* at 21–22.

The ALJ also "discussed evidence" on "specific functional restriction[s]" for the remaining limitations. *See Jeske*, 955 F.3d at 595–96.  For Plaintiff's reports of back pain, the ALJ noted that (1) Plaintiff said the pain affected "his ability to lift [and] bend" and his capacity to stand, walk, and sit; (2) physical exam findings were "largely negative" and "included normal posture and gait[,] . . . an inability to squat, 5/5 strength except in the knee (4/5), normal ranges of motion except in the lumbar spine," and (3) physical examinations show that Plaintiff is "limited to frequently standing/walking, sitting most of the time, and occasional lifting/carrying 20 pounds."  Dkt. 5-2 at 22–24.

Furthermore, Plaintiff does not point to any evidence undermining the ALJ's RFC analysis or suggesting that greater restrictions are necessary. *See* dkt. 7 at 24–26.  And the ALJ provided a lengthy discussion of Plaintiff's testimony, the medical facts, and non-medical evidence before reaching his RFC conclusions. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (holding an ALJ's RFC analysis "adequate" when the ALJ "provide[d] a lengthy discussion of [the claimant's] testimony regarding all her impairments and the

14

information in the medical records"). The ALJ's discussion is thus "adequate" under SSR 96-8p and remand is not required on this ground.

Finally, Plaintiff's argument that hypothetical question posed to the vocational expert is flawed fails as well. Plaintiff argues that because the ALJ used his RFC as the basis for the hypothetical question, the hypothetical question "failed to include all of the necessary information and to be based in medical evidence." Dkt. 7 at 25. However, because the ALJ's discussion is "adequate" under SSR 96-8p, the hypothetical posed to the vocation expert based on that analysis was not erroneous. *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004).

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/19/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

15

Distribution:

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com